NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| MARLA JENSEN and AMANDA MONTEFINESE *ex rel.* UNITED STATES OF AMERICA, and THE STATES OF CALIFORNIA, FLORIDA, ILLINOIS, NEW JERSEY, NEW YORK, RHODE ISLAND, TEXAS, MARYLAND, and CONNECTICUT, and THE COMMONWEALTHS OF MASSACHUSETTS and VIRGINIA,<br><br>Plaintiffs,<br><br>v.<br><br>GENESIS LABORATORY MANAGEMENT, LLC, *et al.*,<br><br>Defendants. | Civil Action No. 20-15121 (GC) (TJB)<br><br>**OPINION** |

**CASTNER, District Judge**

**THIS MATTER** comes before the Court upon a Motion to Dismiss Plaintiffs'/Relators'[1] Third Amended Complaint (TAC) by Defendants Genesis Laboratory Management, LLC (Genesis) and Metropolitan Healthcare Billing, LLC (Metropolitan) pursuant to Federal Rule of Civil Procedure (Rule) 12(b)(6). (ECF Nos. 58, 68.) Relators opposed, and Defendants replied. (ECF Nos. 69, 70.) The Court has carefully reviewed the parties' submissions and decides the

---

[1] Marla Jensen and Amanda Montefinese, as Relators, bring this civil action on behalf of the United States of America, the States of California, Florida, Illinois, New Jersey, New York, Rhode Island, Texas, Maryland, and Connecticut, and the Commonwealths of Massachusetts and Virginia. (ECF No. 58.) *See United States v. Janssen Biotech, Inc.*, 576 F. Supp. 3d 212, 223 (D.N.J. 2021) ("A private plaintiff (or relator) may bring a civil action on behalf of the United States to enforce the [False Claims Act] and may receive a share of any recovery resulting from the lawsuit.").

matter without oral argument pursuant to Rule 78(b) and Local Civil Rule 78.1(b). For the reasons set forth below, and other good cause shown, Defendants' Motion to Dismiss is **GRANTED**.

I.      <u>BACKGROUND</u>

The Court provides this background for the parties and assumes familiarity with the relevant facts, which are set forth in this Court's prior Opinion dismissing Relators' Second Amended Complaint (SAC). *Jensen v. Genesis Lab'y*, Civ. No. 20-15121, 2025 WL 615480 (D.N.J. Feb. 26, 2025). As such, in the interest of judicial economy, the Court includes only the facts and procedural background relevant to the new allegations in Defendants' Motion to Dismiss Relators' TAC.

Relators filed this *qui tam* action against Defendants for violating federal and state False Claims Acts (FCA) by allegedly (1) submitting false claims to federal and state health care programs for "medically unnecessary" services, and (2) waiving copayments and other cost sharing required by those programs in violation of the federal Anti-Kickback Statute, 42 U.S.C. § 1320a-7b(b).[2] (*See generally* ECF No. 58.)

A.      **Factual Background**[3]

Defendant Genesis is a "clinical testing and diagnostic laboratory" that provides "molecular diagnosis and anatomic pathology solutions, focused on gastrointestinal and respiratory diseases." (*Id.* ¶ 2.) Defendant Metro is a "health care billing company that does all

---

[2] A violation of the Anti-Kickback Statute does not create a private right of action but rather may give rise to an independent claim under the False Claims Act. *See United States v. Bracco USA, Inc.*, Civ. No. 20-8719, 2022 WL 17959578, at *7 (D.N.J. Dec. 27, 2022).

[3] For purposes of a motion to dismiss under Rule 12(b)(6), the Court accepts the factual allegations in the TAC as true, but courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citation and quotations omitted). The Court draws all inferences in the light most favorable to Plaintiffs. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008).

of the Genesis claims submission." (*Id.*)  Metro and Genesis are both owned by Dr. Rajiv Uppal, and they operate from different suites in the same building. (*Id.* ¶¶ 6-7, 13.)  Relators Amanda Montefinese and Marla Jensen formerly worked for Genesis in sales and client services roles, respectively. (*Id.* ¶¶ 4-5.)  Relator Montefinese also worked for Metro for approximately ten months. (*Id.*)

Relators allege that Defendants violated the FCA through two schemes.  First, Relators allege that Defendants engaged in a scheme to submit claims for "medically unnecessary" services that Defendants "encourage[d] and promote[d]" through the use of marketing materials and requisition forms. (*Id.* ¶¶ 3, 32.)  The alleged fraud occurred from July 2018 through February 15, 2020. (*Id.* ¶¶ 39-40, 64.)  The alleged scheme involved the use of requisition forms that prioritized panel or "bundled" testing of multiple tests from one sample. (*Id.* ¶¶ 40, 61-64.)  Relators allege that the use of these forms, along with marketing materials, "encourage[d] and promote[d] providers to order . . . medically unnecessary tests." (*Id.* ¶ 32.)  Moreover, having providers order multiple tests was "stressed" at sales team meetings, and sales staff were told to raise the "possibility of co-infections" as an "excuse" for providers to run multiple tests. (*Id.* ¶ 41.)

Second, Relators allege that Defendants violated the Anti-Kickback Statute by routinely waiving coinsurance requirements (including copays and other cost-sharing requirements) to induce providers to use their "molecular and pathology lab and services." (*Id.* ¶¶ 3, 90-93.)  Genesis employed several board-certified pathologists in certain subspecialities who "performed over 100 pathology tests on a monthly basis" that were subject to an average copay of approximately $300. (*Id.* ¶¶ 81-82.)  Relators allege "these tests and copays were in the exclusive control of Defendants" and that "Relators did not have access to these billings." (*Id.*)  Relators

also allege that "[b]ased on practices observed," they "believe that in approximately half of these tests the copay was waived as an inducement to the provider for such referral." (*Id.* ¶ 83.)

### B. Procedural Background

On October 28, 2020, Relators filed their original Complaint under seal. (ECF No. 1.) Over two years later, Relators filed their First Amended Complaint. (ECF No. 15.) On January 22, 2024, the United States filed a notice of election to decline intervention. (ECF No. 22.) On February 1, 2024, California, Florida, Illinois, New Jersey, New York, Rhode Island, Texas, Maryland,[4] Connecticut, Massachusetts, and Virginia also filed a notice of election to decline intervention. (ECF No. 24.)

On March 27, 2024, Relators filed their SAC. (ECF No. 32.) Defendants filed a motion to dismiss the SAC for failure to state a claim. (ECF No. 44.) After briefing and oral argument, the Court granted Defendants' motion and dismissed the SAC without prejudice on February 26, 2025. (ECF Nos. 44, 53-55.)

On April 1, 2025, Relators filed their TAC, asserting the same twelve counts against Defendants. (*See generally* ECF No. 58.) The counts are for violations of the federal FCA, 31 U.S.C. § 3729(a)(1)(A)-(C), (Counts One through Three), and violations of various state FCA counterparts (Counts Four through Twelve). (ECF No. 58 at 32-39.[5])

---

[4]   Because Maryland declined to intervene, the Court dismissed all claims asserted on behalf of Maryland without prejudice in accordance with the Maryland False Health Claims Act, Md. Code Ann., Health Gen, § 2-604(a)(7). (ECF No. 25 ¶ 5.) *See also United States ex rel. Groat v. Boston Heart Diagnostics Corp.*, 255 F. Supp. 3d 13, 20 n.5 (D.D.C. 2017) (noting that Maryland's false claims statute allows an action to proceed only if the state intervenes).

[5]   Page numbers for record cites (*i.e.*, "ECF Nos.") refer to the page numbers stamped by the Court's e-filing system and not the internal pagination of the parties.

## II.   LEGAL STANDARD

On a motion to dismiss for failure to state a claim, courts "accept the factual allegations in the complaint as true, draw all reasonable inferences in favor of the plaintiff, and assess whether the complaint and the exhibits attached to it 'contain enough facts to state a claim to relief that is plausible on its face.'" *Wilson v. USI Ins. Serv. LLC*, 57 F.4th 131, 140 (3d Cir. 2023) (quoting *Watters v. Bd. of Sch. Dirs. of City of Scranton*, 975 F.3d 406, 412 (3d Cir. 2020)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Clark v. Coupe*, 55 F.4th 167, 178 (3d Cir. 2022) (quoting *Mammana v. Fed. Bureau of Prisons*, 934 F.3d 368, 372 (3d Cir. 2019)). When assessing the factual allegations in a complaint, courts "disregard legal conclusions and recitals of the elements of a cause of action that are supported only by mere conclusory statements." *Wilson*, 57 F.4th at 140 (citing *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 904 (3d Cir. 2021)). The defendant bringing a Rule 12(b)(6) motion bears the burden of "showing that a complaint fails to state a claim." *In re Plavix Mktg., Sales Pracs. & Prod. Liab. Litig. (No. II)*, 974 F.3d 228, 231 (3d Cir. 2020) (citing *Davis v. Wells Fargo*, 824 F.3d 333, 349 (3d Cir. 2016)).

When claims sound in fraud, plaintiffs "must satisfy the heightened pleading standards of Federal Rule of Civil Procedure 9(b)." *Burns v. Stratos*, No. 22-1319, 2023 WL 4014474, at *2 n.3 (3d Cir. June 15, 2023) (citing *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007)); *see also* Fed. R. Civ. P. 9(b) ("In alleging fraud . . . , a party must state with particularity the circumstances constituting fraud[.]"); *Foglia v. Renal Ventures Mgmt., LLC*, 754 F.3d 153, 155-58 (3d Cir. 2014) (applying Rule 9(b) to an FCA claim). This ordinarily requires a plaintiff who alleges fraud to "support its allegations 'with all of the essential factual background that would accompany the first paragraph of any newspaper story—that is, the who, what, when, where and

how of the events at issue.'" *United States ex rel. Moore & Co., P.A. v. Majestic Blue Fisheries, LLC*, 812 F.3d 294, 307 (3d Cir. 2016) (quoting *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 217 (3d Cir. 2002)); *accord Frederico*, 507 F.3d at 200 ("To satisfy this standard, the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation.").

### III. DISCUSSION

Relators claim that Defendants engaged in two schemes to submit false claims to the Government: a scheme involving medically unnecessary testing and a scheme involving illegal kickbacks for patient referrals. In doing so, Relators claim that Defendants violated three provisions of the FCA: presenting or causing to be presented a false claim under 31 U.S.C. § 3729(a)(1)(A); making, using or causing to be made or used a false statement in connection with a claim under 31 U.S.C. § 3729(a)(1)(B); and conspiracy to violate the FCA under 31 U.S.C. § 3729(a)(1)(C) (Counts One through Three). (ECF No. 58 ¶¶ 106-108.) Relators also claim that Defendants violated various state FCA counterparts. (*Id.* ¶¶ 109-118.) The Court will address the Relators' claims in turn.

    **A.**     **Presenting False Claims & Making/Using False Statements under 31 U.S.C. § 3729(a)(1)(A) and (a)(1)(B)**

A violation of the FCA occurs when a person "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval." 31 U.S.C. § 3729(a)(1)(A). A violation also occurs when a person "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim." *Id.* § 3729(a)(1)(B). "The only difference between subsections (A) and (B) is that subsection (B) contains an additional element— use of a false record or statement." *United States ex rel. Allstate Ins. Co. v. Phoenix Toxicology & Lab Serv., LLC*, Civ. No. 22-6303, 2024 WL 2785396, at *6 (D.N.J. May 30, 2024) (citing *United*

*States ex rel. Zwirn v. ADT Sec. Servs., Inc.*, Civ. No. 10-2639, 2014 WL 2932846, at *5 (D.N.J. June 30, 2014)).

To state an FCA claim in the Third Circuit, a relator must plead four elements of any alleged scheme: "falsity, causation, knowledge, and materiality."[6] *United States ex rel. v. Petratos v. Genentech Inc.*, 855 F.3d 481, 487 (3d Cir. 2017) (citing *United Health Servs., Inc. v. United States ex rel. Escobar*, 579 U.S. 176, 182 (2016) (materiality), and *United States ex rel. Wilkins v. United Health Grp., Inc.*, 659 F.3d 295, 304-05 (3d Cir. 2011) (falsity, causation and knowledge)); *see also United States v. Care Alts.*, 81 F.4th 361, 366-67 (3d Cir. 2023) (citations omitted) (same). Moreover, an FCA complaint must meet Rule 9(b)'s heightened pleading standard, going "well beyond Rule 8's threshold of plausibility." *United States v. Bracco USA, Inc.*, No. 24-1668, 2025 WL 1261779, at *2 (3d Cir. May 1, 2025) (quoting *United States ex rel. Bookwalter v. UPMC*, 946 F.3d 162, 176 (3d Cir. 2019)). To satisfy this standard, a plaintiff must provide "particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted." *Foglia*, 754 F.3d at 157-58 (citation omitted). Indeed, "[d]escribing a mere opportunity for fraud will not suffice." *Id*. at 158. While a plaintiff need not identify a specific claim for payment, *id.* at 156 (citation omitted), the allegations must be

---

[6] The Third Circuit uses multiple articulations of the elements of an FCA claim. *Compare Bennett v. Bayer Corp.*, No. 24-1807, 2025 WL 1435591, at *2 (3d Cir. Apr. 10, 2025) ("A False Claims Act violation includes four elements: falsity, causation, knowledge, and materiality." (quoting *United States ex rel. v. Petratos v. Genentech Inc.*, 855 F.3d 481, 487 (3d Cir. 2017))), *with United States ex rel. O'Bier v. TidalHealth Nanticoke, Inc.*, No. 21-2123, 2022 WL 264554, at *2 (3d Cir. Jan. 28, 2022) ("To state a claim under the False Claims Act, a plaintiff must allege: '(1) the defendant presented or caused to be presented to an agent of the United States a claim for payment; (2) the claim was false or fraudulent; and (3) the defendant knew the claim was false or fraudulent.'" (quoting *United States ex rel. Bookwalter v. UPMC*, 946 F.3d 162, 175 (3d Cir. 2019))); *see also United States ex rel. Allstate Ins. Co. v. Phoenix Toxicology & Lab Serv., LLC*, Civ. No. 22-6303, 2024 WL 2785396, at *7 (D.N.J. May 30, 2024) ("The Third Circuit sometimes recounts [elements of an FCA claim] differently.").

particular enough to put defendants on notice of the "precise misconduct with which they are charged," *Bookwalter*, 946 F.3d at 176.  Moreover, "[a]llegations of facts that could plausibly have either a legal or illegal explanation fall short of Rule 9(b)'s burden because the possibility of a legitimate explanation undermines an inference that false claims were submitted." *United States v. Bracco USA, Inc.*, Civ. No. 20-8719, 2024 WL 1161384, at *3 (D.N.J. Mar. 14, 2024) (citation modified) (quoting *United States v. Omnicare, Inc.*, 903 F.3d 78, 92 (3d Cir. 2018)), *aff'd*, No. 24-1668, 2025 WL 1261779, at *2 (3d Cir. May 1, 2025).

Plaintiffs add seven paragraphs of additional allegations to the TAC.  Four relate to an alleged scheme involving medically unnecessary claims, (*see* ECF No. 58 ¶¶ 39-42), and three relate to a kickback scheme, (*see id.* ¶¶ 81-83).

### 1. *Medically Unnecessary Testing*

Relators first allege a scheme of "billing for medically unnecessary services," pursuing legal falsity theories of express and implied false certification. (*Id.* ¶¶ 21-80, 94-105.)  The scheme allegedly involved "routinely bundling" necessary and unnecessary tests into panels, performing tests in excess of the patient's needs, performing tests in excess of that requested by the provider, billing for duplicative gastrointestinal (GI)-related tests, and using requisition forms that did not comply with recommended guidance "to promote and market" medically unnecessary tests and panels.  (*Id.* ¶ 3.)

To satisfy the falsity element under Rule 9(b), Relators must plead "the who, what, when, where and how of the events at issue." *Majestic Blue Fisheries*, 812 F.3d at 307.  This Court previously dismissed Relators' SAC for failing to sufficiently plead "when" and "how" the fraud occurred.[7]  *Jensen*, 2025 WL 615480, at *10.  Although Relators' SAC stated that the fraud

---

[7] The Court found that the SAC provided the "essential factual background" as to "who" is alleged to have perpetrated the fraudulent scheme (Defendants); "where" the scheme took place

8

occurred "through February 15, 2020," the Court found that this alone was too indefinite to meet the heightened Rule 9(b) pleading standard. *Id.*[8] The Court noted that a more fulsome complaint would also include "when the fraud began or for how long the fraud took place." *Id.* The Court now finds that Relators sufficiently plead "when" the fraud occurred. Relators now allege that the fraud started "in or about July 2018," when Genesis' owner, Dr. Uppal, directed Relator Montefinese to create requisition forms for new respiratory lab services. (ECF No. 58 ¶¶ 39-40.) The fraud "continued until the onset of the covid pandemic in February 2020." (*Id.* ¶ 40.) Taken together, these allegations are particular enough to meet the heightened Rule 9(b) pleading standard.

The Court also dismissed Relators' SAC because Relators insufficiently pled "how" the fraud occurred. The Court found that Relators' allegations related to marketing materials were too conclusory and insufficient to satisfy the heightened pleading standard of Rule 9(b), as they failed to "identify or explain" what the alleged marketing materials were and did not say how Genesis used them to allegedly encourage and promote medically unnecessary testing. *See Jensen*, 2025

---

(Genesis' principal location in Oakhurst, New Jersey); and "what" the alleged scheme was (Defendants submitting CMS 1500 forms to Medicare for reimbursement of "medically unnecessary" testing). *See Jensen v. Genesis Lab'y*, Civ. No. 20-15121, 2025 WL 615480, at *10 n.12 (D.N.J. Feb. 26, 2025).

[8]     *See also United States ex rel. Simmons v. New Horizons Cmty. Charter Sch.*, Civ. No. 20-00196, 2020 WL 6305513, at *1, 3 (D.N.J. Oct. 28, 2020) (dismissing FCA complaint because, among other deficiencies, the "[p]laintiff [did] not indicate, even by rough approximation, when the alleged fraud took place or for how long," and noting that the complaint listed dates of employment, dates of complaints, and the date of termination); *United States ex rel. Knisely v. Cintas Corp., Inc.*, 298 F.R.D. 229, 240 (E.D. Pa. 2014) (dismissing FCA claim because, among other things, it "f[e]ll far short of [the] newspaper-reporting standard: [the relator] d[id] not allege . . . when or how the fraudulent billing occurred"); *United States ex rel. Hilliard v. Hardin House Inc.*, Civ. No. 17-1043, 2020 WL 362796, at *2 (N.D. Ill. Jan. 22, 2020) (finding that the FCA claim was deficient because "the [s]econd [a]mended [c]omplaint only narrow[ed] the window to a nine-year period reaching back to 'at least 2011'").

WL 615480, at *11. The Court also found that Relators' allegations about the pre-printed requisition forms and test panels suggested, at most, *the potential* of causing physicians to order duplicative testing. *Jensen*, 2025 WL 615480, at *11-12 (emphasis added) (discussing rulings in *United States ex rel. Allen v. Alere Home Monitoring, Inc.*, 334 F. Supp. 3d 349 (D. Mass. 2018), and *Allstate*, 2024 WL 2785396). But as the Third Circuit has stated, "[d]escribing a mere opportunity for fraud will not suffice." *Foglia*, 754 F.3d at 158. Indeed, this Court found that Relators did not allege, for example, that any of the tests within a panel were unnecessary by their nature; that providers were tricked or confused into ordering medically unnecessary tests; that providers were encouraged to order a specific testing regime; or that medical literature or physician opinions acknowledge that components of bundled tests are medically unnecessary. *Id.* at *13.

To try to overcome the deficiencies identified in this Court's prior Opinion, Relators now allege that Genesis' owner "directed" Relator Montefinese to "create [r]equisition [f]orms for the newly offered respiratory lab services," including bundles "based on reimbursement rates."[9] (ECF No. 58 ¶ 40.) The "approved" version of the form used by providers did not contain space for providers to affirm the medical necessity of the testing and did not contain printed options for providers to order individual tests, although Relators note panel tests "can be ordered separately if any of the 'bundle' is not medically necessary." (*Id.* ¶¶ 33, 40, 61-64; ECF No. 56-1 at 2.)

---

[9] The Court previously determined, and Relators do not dispute, that the falsity Relators allege is express and implied false certification. Under express false certification, "an entity is liable under the FCA for falsely certifying that it is in compliance with regulations which are prerequisites to Government payment in connection with the claim for payment of federal funds." *United States ex rel. Wilkins v. United Health Grp., Inc.*, 659 F.3d 295, 305 (3d Cir. 2011). Under implied false certification, liability "attaches when a claimant seeks and makes a claim for payment from the Government without disclosing that it violated regulations that affected its eligibility for payment." *Id.* (citation omitted); *see also United Health Servs., Inc. v. United States ex rel. Escobar*, 579 U.S. 176, 190 (2016) (recognizing the implied certification theory as a basis for liability).

10

Defendants allegedly did not employ commonly used mechanisms to ensure that claims were medically necessary despite guidance encouraging them to do so. (ECF No. 58 ¶¶ 46-50.) Relators also allege that the "need to have providers order multiple tests" was "stressed" at sales team meetings, where it was suggested that the sales team "raise the 'possibility of co-infections' as an excuse to run multiple tests." (*Id.* ¶¶ 39-42; *see also* ECF No. 69 at 42-43.)

In response to Relators' TAC, Defendants argue that the new allegations pertaining to respiratory testing still do not sufficiently state a scheme because Relators still fail to sufficiently allege falsity of the scheme and still fail to provide reliable indicia that false claims were actually submitted. (ECF No. 68-1 at 17-21.) Relators respond that, with the new allegations, it is "reasonable to infer falsity." (ECF No. 69 at 35-44.) Relators also argue that the additional facts in the TAC combined with Defendants' alleged use of "deceptive, pre-printed requisition forms, test panels, and marketing materials" leads to the logical conclusion that Defendants actually submitted claims for reimbursement. (*Id.* (citing ECF No. 58 ¶¶ 39-42).)

As a threshold matter, Relators' new allegations pertain only to respiratory lab testing. Therefore, Relators still have not sufficiently pled falsity regarding GI testing. Moreover, Relators' brief in opposition to Defendants' Motion to Dismiss does not argue otherwise. (*See* ECF No. 69 at 35-44.) Accordingly, to the extent Relators premise an FCA violation on GI testing, the claim is dismissed for the reasons stated in the Court's prior Opinion. *See Jensen*, 2025 WL 615480, at *11-14. As such, the Court considers Relators' allegations of falsity only insofar as they relate to the respiratory testing scheme.

The Court finds that Relators' allegations regarding respiratory testing do not overcome the deficiencies this Court identified in its prior Opinion, and therefore Relators fail to sufficiently state this alleged scheme. As the Court noted in its prior Opinion, to survive a motion to dismiss,

11

"a relator must allege facts demonstrating falsity beyond the use of the test panels and pre-printed requisition forms." *Id*. at *11 (collecting cases). But Relators again raise only the *possibility* of false claims, and Relators again do not identify reliable indicia that would enable the Court to draw a strong inference that false claims were actually submitted for payment. *Foglia*, 754 F.3d at 158 ("[A] mere opportunity for fraud will not suffice [to meet the heightened pleading standard of Rule 9(b)]."). Relators allege that the "possibility" of co-infections, which sales staff were directed to discuss with their sales targets, is insufficient to establish medical necessity and that an official "diagnosis or treatment of illness or injury" is required to meet the "reasonable and necessary" standard. (ECF No. 58 ¶¶ 41-42.) However, the respiratory requisition form attached to the TAC lists the various pathogens that are tested in each panel ordered by the provider, and the form also requires the provider to identify the diagnosis being treated—for example, codes for "Flu Like Symptoms," "Cough" and "Acute upper respiratory infection" are listed, among others, alongside blank spaces denoted "Other" for a provider to include a code not listed. (ECF No. 56-1 at 2-3.) Moreover, as the Court noted in its previous Opinion, the form includes the following language: "It is the provider's responsibility to order tests that are medically necessary and in the best interest of the patient."[10] (*Id.*) These manifest efforts to inform providers of the tests they were ordering, to seek a specific diagnosis, and to remind providers of their duty to order only medically necessary tests seem contradictory to the falsity of the alleged scheme, and Relators do not address these inconsistencies in the TAC or in their briefing of this motion.

---

[10]  This printed statement appears to contradict Relators' allegation that "Defendant's respiratory panel requisition form (Exhibit A) does not have a printed statement on the requisition form reiterating that when ordering tests for which Medicare reimbursement will be sought. Physicians (or other individuals authorized by law to order tests) should only order tests that are medically necessary for the diagnosis or treatment of a patient, rather than for screening purposes." (ECF No. 58 ¶ 50.)

Even if the "how" of the scheme were sufficiently stated, Relators still must identify "reliable indicia" that enable the Court to make a strong inference that false claims were actually submitted.[11] *Foglia*, 754 F.3d at 157-58. As discussed, while the TAC includes a sample respiratory requisition form, the form is incomplete. (*Id.*) The TAC contains no other exhibits or allegations that reliably establish the submission of false claims to the Government. Indeed, in other cases where courts have found that relators sufficiently stated FCA claims involving the use of requisition forms, the relators "corroborated" their allegations in some way, such as by reviewing data to provide "a 'concrete example' of a portion of the representative claims" submitted, *United States ex rel. Groat v. Boston Heart Diagnostics Corp.*, 255 F. Supp. 3d 13, 22 (D.D.C. 2017), or by otherwise providing some type of sample or example. *See Jensen*, 2025 WL 615480, at *13 (collecting cases and noting that allegations that would lead to this inference could include, for example, that by ordering a panel test, providers inherently ordered medically unnecessary tests; that providers discovered or believed they were tricked or confused into ordering medically unnecessary tests; that providers were encouraged to order specific respiratory testing regimes that included medically unnecessary tests; or that medical literature or physician opinions establish that any of the tests comprising the panels were not medically necessary); *Allen*, 334 F. Supp. 3d at 358-59 (granting motion to dismiss the relator's FCA theory because "the [requisition] forms, by themselves, may create a possibility of fraud by pressuring doctors into prescribing medically unnecessary tests . . . [b]ut they do not give rise to a 'strong inference' that false claims were actually submitted"); *Allstate*, 2024 WL 2785396, at *11 (finding the relator identified reliable indicia that false claims were submitted to the Government when the relator

---

[11] The Court is mindful that Relators need not "identify a false claim that was in fact submitted," but nonetheless "reliable indicia" are still required at the pleading stage. *Foglia v. Renal Ventures Mgmt., LLC*, 754 F.3d 153, 155-56 (3d Cir. 2014).

13

reviewed claims submitted by the defendant to private insurers and identified data that appeared to support the existence of the alleged scheme); *Groat*, 255 F. Supp. 3d at 19, 23 (finding relator sufficiently pleaded that providers ordered medically unnecessary tests where the relator alleged tests without certain diagnostic codes were "known to be medically unnecessary," analyzed testing performed for "thousands of patients by hundreds of laboratories" to determine the "vast majority" of tests were for medically unnecessary screening purposes, "cited government and scientific authority to support" the allegations, and "provided a specific example" of unnecessary tests); *see also United States ex rel. Senters v. Quest Diagnostics Inc.*, No. 24-12998, 2025 WL 1951196, at *3 (11th Cir. July 16, 2025) (affirming dismissal of a case against a laboratory when "[r]elator provided no factual allegations to indicate that doctors later discovered, or even now believe, that they were tricked or confused [by the laboratory] into ordering medically unnecessary tests or tests that they did not intend to order"); *United States v. Fillmore Cap. Partners, LLC*, No. 24-1606, 2025 WL 971668, at *3 (3d Cir. Apr. 1, 2025) (finding the relator's expert reports, personal experiences, and staff affidavits did not suffice as reliable indicia of fraud); *U.S. ex rel. Heath v. AT&T, Inc.*, 791 F.3d 112, 126 (D.C. Cir. 2015) (finding the complaint satisfied the Rule 9(b) standard where the allegations were "corroborated" by a "concrete example" of "the very type of overbilling that follows the complaint's pattern").

As such, although Relators have sufficiently pled "when" the fraud occurred, the Court finds that Relators have not sufficiently pled "how" it occurred or any reliable indicia that false claims were actually submitted.[12] Therefore, this scheme cannot survive Defendants' Motion to Dismiss.

---

[12] Moreover, although not argued by the parties, the Court also notes that Relators still have not sufficiently pled the materiality element of an FCA claim. The Court identified this deficiency in its prior Opinion. *See Jensen*, 2025 WL 615480, at *15 n.17.

### 2. *Anti-Kickback Statute*

Relators next allege a kickback scheme, wherein Defendants allegedly routinely waived required patient coinsurance to induce providers to use their services. (ECF No. 58 ¶ 3.) To state a violation of the Anti-Kickback Statute, Relators must plead that Defendants (1) "knowingly and willfully"; (2) "solicit[ed] or receive[d] any remuneration"; (3) "in return for referring an individual to a person for the furnishing . . . of any item or service for which payment may be made in whole or in part under a Federal health care program." *United States ex rel. Perri v. Novartis Pharm. Corp.*, Civ. No. 15-6547, 2019 WL 6880006, at *10 (D.N.J. Feb. 21, 2019) (quoting *United States v. Goldman*, 607 F. App'x 171, 173-74 (3d Cir. 2015)). As courts in this district have recognized, "'[t]he crux of whether the Anti-Kickback Statute [is] violated' is 'whether the parties entered [into] business arrangements in exchange for, or to induce, patient referrals.'" *Id.* (citation omitted).

Relators' TAC adds new allegations of kickbacks pertaining to Defendants' pathology lab testing. They assert that Genesis employed board-certified pathologists and performed over 100 pathology tests monthly for an average copay of approximately $300 for which billing was in the "exclusive control" of Defendants. (ECF No. 58 ¶¶ 81-82.) "Based on practices observed, Relators believe that in approximately half of these tests the copay was waived as an inducement to the provider for such referral." (*Id.* ¶ 83.)

Defendants argue that Relators' new allegations still fail to plead remuneration and inducement. On remuneration, Defendants assert that Relators "have not added any additional specific allegations about the performance" of tests subject to a copay, and as a result Relators' claim "rests on the same conclusory foundation as it did in the SAC." (ECF No. 68-1 at 23-24.) Relators counter that waiving co-pays "falls within the definition of 'remuneration'" and noting that, because pathology tests are paid under Medicare Part B, they are subject to co-pays and

15

deductibles.  (ECF No. 69 at 45-46.)  On inducement, Defendants argue that Relators still fail to plead "how the alleged inducement worked" or "how Defendants acted with a purpose to induce referrals."  (ECF No. 68-1 at 24-25.)  Relators counter by restating the newly added allegations and arguing that those, plus the allegations in the SAC and now in the TAC about sales meeting discussions, "clearly satisfies the Rule 9(b) standard."  (ECF No. 69 at 44-46.)

In its prior Opinion, this Court found that Relators did not sufficiently allege remuneration involving pathology testing because the SAC contained only a single cursory reference to "cytopathology, tissue pathology, and FISH."[13]  *See Jensen*, 2025 WL 615480, at *14.  Moreover, the exhibits attached to the SAC did not "appear to suggest that Defendants performed [cytopathology, tissue pathology, and FISH] tests . . . and then subsequently waived the required payments."  *Id*.  Also, the Court found inducement lacking, writing that "the SAC's allegations pertaining to the write-off policy and the virtual sales call . . . do not meet Rule 9(b)'s heightened pleading standard" because they "fail to demonstrate that Defendants waived copayments with the purpose of inducing referrals from either physicians or patients."  *Id.* at *15.

Although Relators include additional allegations pertaining to Genesis' pathology testing, the TAC still fails to sufficiently allege remuneration and inducement.  Relators rely heavily on the conclusory assertion that "[b]ased on practices observed," Relators "believe that in approximately half of these [pathology] tests the copay was waived."  (ECF No. 58 ¶ 83.)  Relators do not name or describe the "practices" that give rise to their belief of waived pathology copays.  With "no sufficient facts in support" of these allegations, the Court cannot find that this scheme

---

[13]   Relators also allege remuneration as to respiratory and GI tests, but as this Court previously found, those tests are clinical laboratory tests, which are not subject to copayments and deductibles under the Medicare clinical laboratory fee schedule.  *Jensen*, 2025 WL 615480, at *14.

16

has been sufficiently pled.[14] *Perri*, 2019 WL 6880006, at *17 (finding no inducement where allegations were "conclusory and unsupported by any factual details"); *see also Bracco USA*, 2025 WL 1261779, at *2 (finding Rule 9(b) pleading standard not met where the plaintiff did not "set forth the specific facts or basis upon which his belief is founded") (citation omitted); *In re Rockefeller*, 311 F.3d at 216 ("Although Rule 9(b) falls short of requiring every material detail of the fraud, . . . plaintiffs must use 'alternative means of injecting precision and some measure of substantiation into their allegations of fraud.'" (quoting *In re Nice Systems, Ltd. Sec. Litig.*, *212 135 F. Supp. 2d 551, 577 (D.N.J. 2001))); *United States ex rel. Judd v. Quest Diagnostics, Inc.*, 638 F. App'x 162, 169 (3d Cir. 2015) (finding the plaintiff's allegations failed where the plaintiff "provide[d] no reason to believe" that the defendant engaged in a kickback scheme, and collecting cases); *Druding v. Care Alternatives, Inc.*, 164 F. Supp. 3d 621, 633-34 (D.N.J. 2016) (finding the Anti-Kickback Statute insufficiently pled where the relators alleged that "gifts, lunches, dinners,

---

[14] To the extent Relators rely on paragraphs 92 and 93 of the TAC as the "practices observed," the Court finds these paragraphs insufficient to establish this scheme, as it did in its prior Opinion. (ECF No. 58 ¶¶ 92-93.) *See also Jensen*, 2025 WL 615480, at *15 (collecting cases). The Court notes that paragraph 92 pertains to a specific instance regarding gastroenterology testing, as indicated in Exhibit R. Clinical laboratory testing is not subject to copays or deductibles as Relators "acknowledge," and the exhibit does not indicate that the test was a pathology test. (*See* ECF No. 56-1 at 55-56; ECF No. 69 at 46.) As such, the notation in Exhibit R, which states that the salesperson "assured" the office that the customer would not receive a bill, could just as likely have followed a clinical laboratory test. (ECF No. 56-1 at 55-56.) Because "the possibility of a legitimate explanation . . . undermines an inference that false claims were submitted," a kickback scheme is not sufficiently pled through this allegation. *United States v. Bracco USA, Inc.*, Civ. No. 20-8719, 2024 WL 1161384, at *3 (D.N.J. Mar. 14, 2024). In paragraph 93, Relators allege a sales meeting where "a question was asked" regarding "the write off policy." (ECF No. 58 ¶ 93.) Relators allege that, in response, Dr. Uppal counseled that the "biggest sales point" should be a provider's ability to requisition multiple services "under just one roof." (*Id.*) Dr. Uppal also noted that "you have to be careful as to what you say about insurance" and allegedly advised *against* telling providers that "we repeatedly write everybody's balances off" or that "we don't balance bill patients." (*Id.*) As such, Relators have not alleged facts sufficient to establish a write off policy that induced any providers. Moreover, there is no mention of pathology testing or Medicare, or any other means of "injecting precision" or "some measure of substantiation" into Relators' allegations. *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002).

17

additional staff, and other designed perks were offered to physicians, administrators, director of nurses, social workers, who could supply referrals" and certain workers were "instructed not to write about gifts in their daily reports" because the allegations did not "detail at least examples of what gifts, meals, and other perks were offered by whom, to whom, and when"); *cf. United States ex rel. Schumann v. AstraZeneca PLC*, Civ. No. 03-5423, 2010 WL 4025904, at *10 (E.D. Pa. Oct. 13, 2010) (finding allegations of a kickback scheme adequately put pharmaceutical defendant on notice of the circumstances of fraud where the relator alleged the parties involved, the drugs at issue, the dates the kickbacks were paid, the dates of certain meetings where the sham agreements were discussed, and the names of persons at those meetings). Because referring to "practices observed" without more does not meet the heightened pleading requirements of Rule 9(b), Relators have insufficiently pled this scheme and therefore have not stated a claim as to Defendants' alleged violation of the FCA based on the Anti-Kickback Statute.

     **B.**     **Conspiracy under 31 U.S.C. § 3729(a)(1)(C)**

The FCA imposes liability on whoever "conspires to commit a violation" of any acts listed in 31 U.S.C. § 3729(a)(1)(C). "To state a conspiracy claim under the FCA, a relator must allege (1) 'a conspiracy to get a false or fraudulent claim allowed or paid' and (2) 'an act in furtherance of the conspiracy.'" *United States ex rel. Schieber v. Holy Redeemer Healthcare Sys., Inc.*, Civ. No. 19-12675, 2024 WL 1928357, at *7 (D.N.J. Apr. 30, 2024) (quoting *United States v. Medco Health Sys., Inc.*, Civ. No. 12-522, 2014 WL 4798637, at *11 (D.N.J. Sept. 26, 2014)). Because Relators have not adequately pled an underlying violation of the FCA, Relators' conspiracy claim must also be dismissed. *See United States ex rel. Petras v. Simparel, Inc.*, 857 F.3d 497, 507 n.53 (3d Cir. 2017) (citing *Pencheng Si v. Laogai Rsch. Found.*, 71 F. Supp. 3d 73, 89 (D.D.C. 2014) for the proposition that without an underlying violation of the FCA, there can be no liability for conspiracy).

18

### C. Relators' State Law Claims

Where a federal court has original jurisdiction over certain claims, it also has supplemental jurisdiction over all other related claims that form part of the "same case or controversy" under Article III of the United States Constitution. 28 U.S.C. § 1367(a); see also *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966) (same). Section 1367(c)(3) provides that district courts "may decline to exercise supplemental jurisdiction . . . if . . . the district court has dismissed all claims over which it has original jurisdiction." As relevant here, "where the claim over which the district court has original jurisdiction is dismissed before trial, the district court *must* decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." *Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000) (emphasis in original) (citation omitted). Additionally, the federal court should be guided by the goal of avoiding "[n]eedless decisions of state law . . . both as a matter of comity and to promote justice between the parties." *Gibbs*, 383 U.S. at 726.

Here, the Court has dismissed the federal claims at an early stage and declines to exercise supplemental jurisdiction over any potential state law claims at this time. *See also Travis*, 596 F. Supp. 3d at 543 n.159 ("Where no party has alleged a material difference between the standards applicable to the FCA and equivalent state laws, on a motion to dismiss these claims succeed or fall together." (citing *Petratos*, 141 F. Supp. 3d at 322)).

### D. Defendants' Request to Dismiss the TAC with Prejudice

Defendants again request that this Court dismiss the TAC with prejudice because Relators have "failed to cure the errors 'precisely delineated' by this Court." (ECF No. 68-1 at 26 (citing *Taylor v. Comhar, Inc.*, Civ. No. 16-1218, 2022 WL 102334, at *4 (E.D. Pa. Jan. 11, 2022)).) They argue that Relators are "represented by experienced counsel, yet the amended complaint adds little, and fails to remedy the deficiencies identified earlier." (*Id.* (quoting *Taylor*, 2022 WL 102334, at

19

*4).)  Plaintiffs make no argument regarding dismissal with or without prejudice.  The Court has carefully considered this issue and determines that Relators may file a motion seeking leave from the Court to file a Fourth Amended Complaint.

## IV.     CONCLUSION

For the foregoing reasons, and other good cause shown, Defendants' Motion to Dismiss (ECF No. 68) is **GRANTED** without prejudice.  An appropriate Order follows.

Dated: December 30, 2025

_____
**GEORGETTE CASTNER**
**UNITED STATES DISTRICT JUDGE**