NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| MARLA JENSEN and AMANDA MONTEFINESE *ex rel.* UNITED STATES OF AMERICA, and THE STATES OF CALIFORNIA, FLORIDA, ILLINOIS, NEW JERSEY, NEW YORK, RHODE ISLAND, TEXAS, MARYLAND, and CONNECTICUT, and THE COMMONWEALTHS OF MASSACHUSETTS and VIRGINIA,<br><br>Plaintiffs,<br><br>v.<br><br>GENESIS LABORATORY MANAGEMENT, LLC, *et al.*,<br><br>Defendants. | Civil Action No. 20-15121 (GC) (TJB)<br><br>**OPINION** |

**CASTNER, District Judge**

  **THIS MATTER** comes before the Court upon Plaintiffs'/Relators'[1] Motion for Leave to File a Fourth Amended Complaint (FAC) pursuant to Federal Rule of Civil Procedure (Rule) 15. (ECF Nos. 73.)  Defendants Genesis Laboratory Management, LLC (Genesis) and Metropolitan Healthcare Billing, LLC (Metropolitan) opposed, and Relators did not reply.  (ECF No. 76.)  The Court has carefully reviewed the parties' submissions and decides the matter without oral argument

---

[1]   Marla Jensen and Amanda Montefinese, as Relators, bring this civil action on behalf of the United States of America, the States of California, Florida, Illinois, New Jersey, New York, Rhode Island, Texas, Maryland, and Connecticut, and the Commonwealths of Massachusetts and Virginia.  (ECF No. 58.)  *See United States v. Janssen Biotech, Inc.*, 576 F. Supp. 3d 212, 223 (D.N.J. 2021) ("A private plaintiff (or relator) may bring a civil action on behalf of the United States to enforce the [False Claims Act] and may receive a share of any recovery resulting from the lawsuit.").

pursuant to Rule 78(b) and Local Civil Rule 78.1(b).  For the reasons set forth below, and other good cause shown, Relators' Motion is **DENIED**.

## I.      BACKGROUND

### A.      Factual Background

The Court assumes the parties' familiarity with the underlying facts, which are set forth in greater detail in this Court's prior Opinions dismissing Relators' Second Amended Complaint (SAC) and Third Amended Complaint (TAC).  *See Jensen v. Genesis Lab'y*, Civ. No. 20-15121, 2025 WL 615480 (D.N.J. Feb. 26, 2025); *Jensen v. Genesis Lab'y Mgmt., LLC*, Civ. No. 20-15121, 2025 WL 3763951 (D.N.J. Dec. 30, 2025).

Defendant Genesis is a "clinical testing and diagnostic laboratory" that provides "molecular diagnosis and anatomic pathology solutions, focused on gastrointestinal and respiratory diseases."  (ECF No. 73-2 ¶ 2.)  Defendant Metro provides health care billing services, including for Genesis.  (*Id.* ¶¶ 2, 13-14.)  Metro and Genesis are both owned by Dr. Rajiv Uppal, and they operate out of the same building.  (*Id.* ¶¶ 6-7, 13.)  Relators Amanda Montefinese and Marla Jensen formerly worked for Genesis in sales and client services roles, respectively.  (*Id.* ¶¶ 4-5.)  Montefinese "assist[ed] in managing the sales team and training on aspects of new products."  (*Id.* ¶ 4.)  In this role, she "ensur[ed] the sales team has up-to-date resources (from promotional materials, educational articles) that they need to promote the product."  (*Id.*) Montefinese also worked for Metro for approximately ten months as a biller.  (*Id.*)  In Jensen's role, Jensen "acted as a point of contact for the sales team to resolve issues with clients and with patients" and "handled onboarding process of all new clients."  (*Id.* ¶ 5.)  She also "prepar[ed] detailed reports for sales team and management" and "ensur[ed] all laboratory reports were completed in a timely fashion."  (*Id.*)

2

Relators allege that Defendants violated the False Claims Act (FCA) through two schemes: a scheme to induce providers to order "medically unnecessary" tests with marketing materials and requisition forms, and a kickback scheme in which Defendants routinely waived coinsurance requirements to induce provider referrals. (*See generally id.*)

As for the first scheme, Relators allege that from July 2018 through February 15, 2020, Genesis used requisition forms that encouraged healthcare providers to order multiple tests from one test kit. (*Id.* ¶¶ 32-33, 39-47, 53, 62-76, 80-85.) They further allege that Genesis used marketing materials to encourage and promote medically unnecessary testing. (*Id.* ¶ 32.) In addition, sales team meetings "stressed" the need to have providers order multiple tests, sales staff were told to "raise the 'possibility of co-infections' as an 'excuse' to run multiple tests," and sales staff told providers they could not run single tests. (*Id.* ¶¶ 41-47.)

As for the second scheme, Relators allege that Defendants waived coinsurance requirements (including copays and other cost-sharing requirements) to induce providers to use Genesis' "molecular and pathology lab and services." (*Id.* ¶¶ 3, 86-88, 95-98.) Genesis employed several board-certified pathologists who "performed over 100 pathology tests on a monthly basis" that were subject to an average copay of approximately $300, but, "[b]ased on practices observed," the copay was waived for approximately half of these tests "as an inducement to the provider for such referral." (*Id.* ¶¶ 86-88.)

### B.    Procedural Background

#### 1.    *Initial Complaint and First Amended Complaint*

Relators filed their initial Complaint on October 28, 2020. (ECF No. 1.) Over two years later, on December 21, 2022, Relators filed a First Amended Complaint as a matter of course. (*See* ECF No. 15.) *See also* Fed. R. Civ. P. 15(a).

On January 22, 2024, the United States filed a notice of election to decline intervention. (ECF No. 22.)  On February 1, 2024, California, Florida, Illinois, New Jersey, New York, Rhode Island, Texas, Maryland, Connecticut, Massachusetts, and Virginia also filed a notice of election to decline intervention.  (ECF No. 24.)  Relators and Defendants subsequently agreed to allow Relators to file a Second Amended Complaint (SAC).  (*See* ECF Nos. 30, 33.)

### 2.    *The Second Amended Complaint*

On March 27, 2024, Relators filed their SAC.  (ECF No. 32.)  Defendants moved to dismiss it for failure to state a claim.  (ECF No. 44.)  After briefing and oral argument, the Court granted Defendants' motion.  (ECF Nos. 44, 53-55.)  The Court found that Relators failed to sufficiently allege the "falsity" of the medically unnecessary testing scheme under the heightened Rule 9(b) pleading standard because Relators did not sufficiently allege "when" and "how" the alleged fraud occurred.  *Jensen*, 2025 WL 615480, at *10; *see also id.* n.12.  The Court reasoned that while Relators alleged that the fraud occurred "through February 15, 2020," Relators did not allege when the fraud began or for how long it took place.  *Id.* at *10.

The Court further determined that Relators did not include factual allegations that demonstrated falsity beyond the mere use of test panels and pre-printed requisition forms, and thus insufficiently alleged "how" the fraud occurred under those theories.  *Id.* at *11.  While Relators attached several completed requisition forms pertaining to gastrointestinal (GI) testing to the SAC, the Court found the forms appeared to contradict the SAC's assertions of medically unnecessary testing.  *Id.* at *13.  The forms demonstrated that providers indeed had "the option of selecting bundled test panels or individual stool testing" and "clearly illustrate[d] which individual tests are included in the different panels," undermining Relators' allegations that providers were compelled to order multiple unnecessary tests.  *Id.*  Moreover, Relators conceded that "some tests were

4

medically necessary." *Id.* Together, the Court found Relators' inadequately alleged "how" the fraud occurred as to GI testing. *Id.*

The Court also explained how Relators' allegation about the use of marketing materials to encourage or promote unnecessary testing, alone, was too conclusory. *Id.* at *11. In addition, the Court found that Relators failed to allege the requisite "reliable indicia that lead[s] to a strong inference that [false] claims were actually submitted," instead relying only on conclusory allegations. *Id.* at *13 (citing *Foglia v. Renal Ventures Mgmt., LLC*, 754 F.3d 153, 155-56 (3d Cir. 2014)). Pointing to rulings from other district courts, the Court concluded that while Relators alleged an opportunity or potential for fraud, this did not meet the heightened Rule 9(b) pleading standard. *Id.* at *11-13.

The Court also found that the alleged kickback waiver scheme did not sufficiently allege a violation of the Anti-Kickback statute. The tests at issue did not have co-payments or deductibles, so the Court found Defendants could not have solicited or received the requisite remuneration for those tests. *Id.* at *14. For a separate set of tests possibly subject to co-payments and deductibles, the Court found that Relators' mere statement that Defendants offered those tests was not enough to plead remuneration. *Id.* The Court further found that Defendants failed to sufficiently allege that Defendants entered into arrangements to induce patient referrals. *Id.* at *15. While Relators made allegations pertaining to a purported "write-off" policy, the Court held that these did not meet Rule 9(b)'s heightened pleading standard because they "fail[ed] to demonstrate that Defendants waived copayments with the purpose of inducing referrals from either physicians or patients." *Id.*

The Court noted that even if Relators sufficiently alleged the falsity of either of these alleged schemes, Relators' claims would still fail because Relators failed to sufficiently allege the materiality of the schemes as required to state a claim.  *Id.* at \*15 n.17.

Because Relators did not adequately plead an underlying violation of the FCA, the Court also dismissed Relators' conspiracy claim.  *Id.* at \*16.  The Court further noted that even if an underlying violation had been pled, Relators did not allege any agreement between Defendants as is necessary to sufficiently allege a conspiracy.  *Id.* at \*16 n.18.  Finally, the Court declined to exercise supplemental jurisdiction over the remaining state law claims.  *Id.* at \*16.

The Court dismissed all claims without prejudice and gave Relators thirty days to file an amended complaint.  (ECF No. 55.)

### 3.    *The Third Amended Complaint*

Relators filed a Third Amended Complaint (TAC) on March 26, 2025.  (ECF Nos. 56.) Relators added seven paragraphs of additional allegations and asserted the same twelve counts against Defendants; they made minor edits but did not remove any paragraphs.  (*See* ECF No. 58.) Four new paragraphs related to the scheme involving medically unnecessary claims, (*see id.* ¶¶ 39-42), and three related to the kickback scheme, (*see id.* ¶¶ 81-83).  On June 27, 2025, Defendants filed a motion to dismiss the TAC, which the Court granted on December 30, 2025.  (ECF Nos. 68, 71, 72.)

The Court first considered the sufficiency of the allegations pertaining to medically unnecessary testing.  Relators made no new allegations pertaining to GI testing.  As to respiratory lab services, Relators alleged that the fraud began in July 2018, when Dr. Uppal directed Montefinese to create requisition forms offering bundles for respiratory testing based on reimbursement rates because "it was not 'cost effective to run just a single test.'"  (ECF No. 58 ¶ 40.)  Relators also newly alleged that at sales meetings, "the need to have providers order

6

multiple tests was stressed" and "[s]ales staff were told to raise the 'possibility of co-infections' as an excuse to run multiple tests." (*Id.* ¶ 41.)

The Court found that these additional paragraphs overcame the deficiency regarding "when" the fraud occurred but still failed to sufficiently allege "how" the fraud occurred under the heightened pleading standard. *Jensen*, 2025 WL 3763951, at *4-6. The Court first noted that Relators made no new allegations pertaining to GI testing, and as such Relators had not overcome the Court's concerns discussed in the Court's prior Opinion regarding contradictions between the GI requisition form exhibits and Relators' allegations.[2] *Id.* at *6.

The Court then considered the sufficiency of Relators' allegations regarding respiratory testing and found that Relators failed to state a claim under the FCA. The Court explained that "Relators again raise[d] only the *possibility* of false claims, and Relators again [did] not identify reliable indicia that would enable the Court to draw a strong inference that false claims were actually submitted for payment." *Id.* at *6 (emphasis in original). The Court reasoned that the blank requisition form for respiratory testing attached to the TAC suggested only a possibility of false claims because it contained "manifest efforts to inform providers of the tests they were ordering, to seek a specific diagnosis, and to remind providers of their duty to order only medically necessary tests," which "seem[ed] contradictory to the falsity of the alleged scheme" and which

---

[2]    Relators did not object to Defendants' assertions that "Relators have not changed their GI-related allegations which this Court already dismissed" and that the four paragraphs Relators added to the TAC "pertain[ed] only to Genesis's respiratory lab services." (*See* ECF No. 68-1 at 16-1; ECF No. 69 at 41.) *See also Jensen*, 2025 WL 3763951, at *6. Moreover, Relators' brief appeared to concede that the GI test requisition form enabled providers to select specific tests as needed and to certify their medical necessity. (*See* ECF No. 69 at 39-40 ("In this section [of the GI test requisition form] are listed multiple GI issues with check off boxes. By checking off one or more of the boxes, the provider is confirming, in effect certifying, the reason(s) why the testing is required. This section of the form is crucial as it requires the provider to provide the medical basis and justification for ordering the tests in the first place. Following this section is a line for the provider to sign.").)

Relators made no effort to explain. *Id.* The Court further found that Relators again did not identify reliable indicia that false claims were actually submitted to the Government for payment, citing numerous examples of such indicia from other cases. *Id.* ("[A]llegations that would lead to this inference could include, for example, that by ordering a panel test, providers inherently ordered medically unnecessary tests; that providers discovered or believed they were tricked or confused into ordering medically unnecessary tests; that providers were encouraged to order specific respiratory testing regimes that included medically unnecessary tests; or that medical literature or physician opinions establish that any of the tests comprising the panels were not medically necessary.").

The Court also dismissed the Relators' kickback scheme. Relators' new allegations stated that Defendants employed pathologists who performed over 100 pathology tests monthly for an average copay of approximately $300. *Id.* at *7. Relators alleged that "[b]ased on practices observed," they "believe[d] that in approximately half of these tests the copay was waived as an inducement to the provider for such referral." *Id.* The Court found that this allegation was conclusory, as Relators pled "no sufficient facts in support" of the allegation. *Id.* at *8 (collecting cases).

Because Relators again did not sufficiently allege a claim under the FCA, the Court again dismissed Relators' conspiracy claim and again declined supplemental jurisdiction over the state law claims. *Id.* at *8-9. The Court granted Defendants' Motion to Dismiss in full and gave Relators forty-five days to file a motion for leave to file an amended pleading that "addresses the issues identified by this Court in the accompanying Opinion and in its prior Opinion dismissing the Second Amended Complaint." (ECF No. 72.)

8

### C. New Allegations

On February 13, 2026, Relators filed the instant Motion, (ECF No. 73), alleging the same three violations of the FCA, 31 U.S.C. § 3729(a)(1)(A)-(C),[3] (Counts One through Three), and the same violations of various state FCA counterparts (Counts Four through Twelve), (ECF No. 73-2 at 33-40).[4] Relators' proposed FAC includes five additional paragraphs of allegations regarding Defendants' use of requisition forms. (*See* ECF No. 75-1 ¶¶ 43-47.) No factual allegations are removed, and no allegations pertaining to the kickback scheme were added. (*See generally id.*)

Relators newly allege that "doctors would periodically and routinely call and ask Relator Marla Jensen if they could request only a single test, such as a calprotectin test, as opposed to having to order multiple tests." (ECF No. 73-2 ¶ 43.) When Jensen asked another sales representative if doctors could request a single test, "Relator was advised that they could not because Dr. Uppal had instructed the sales staff that it was not economically feasible to run just one test on that panel." (*Id.* ¶ 44.) Relators also allege that changes to the respiratory requisition form "would be discussed and coordinated for billing purposes during management meetings and sales rep meetings," and that "training concerning new test offerings would also be discussed and coordinated." (*Id.* ¶¶ 45-46.) Relators allege "the panels would be pushed by the sales reps at the

---

[3] A violation of the FCA occurs when a person "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval." 31 U.S.C. § 3729(a)(1)(A). A violation also occurs when a person "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim." *Id.* § 3729(a)(1)(B). "The only difference between subsections (A) and (B) is that subsection (B) contains an additional element— use of a false record or statement." *United States ex rel. Allstate Ins. Co. v. Phoenix Toxicology & Lab Servs., LLC*, Civ. No. 22-6303, 2024 WL 2785396, at *6 (D.N.J. May 30, 2024) (citing *United States ex rel. Zwirn v. ADT Sec. Servs., Inc.*, Civ. No. 10-2639, 2014 WL 2932846, at *5 (D.N.J. June 30, 2014)).

[4] Page numbers for record cites (*i.e.*, "ECF Nos.") refer to the page numbers stamped by the Court's e-filing system and not the internal pagination of the parties.

direction of management, in case there was a 'co-infection.'" (*Id.* ¶ 46.) Sales representatives were also told "to advise providers that co-infections were a possibility and by performing the panels, the panels would be able to detect all abnormalities the patient might have with just this one test." (*Id.* ¶ 47.)

## II.   <u>LEGAL STANDARD</u>

Rule 15(a)(2) permits a party to amend its pleading with the court's leave, which "[t]he court should freely give . . . when justice so requires." Fed. R. Civ. P. 15(a)(2). The decision to grant or deny leave is "within the discretion of the District Court." *Foman v. Davis*, 371 U.S. 178, 182 (1962). Reasons to deny leave to amend include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Id.*; *see also In re Burlington Coat Factory Secs. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997) ("Among the grounds that could justify a denial of leave to amend are undue delay, bad faith, dilatory motive, prejudice, and futility.").

## III.   <u>DISCUSSION</u>

### A.   Futility

Because the parties have most heavily briefed whether amendment would be futile, the Court will consider this factor before moving to the other potential grounds for dismissal. "Amendment of the complaint is futile if the amendment will not cure the deficiency in the original complaint or if the amended complaint cannot withstand a renewed motion to dismiss." *Gabros v. Shore Med. Ctr.*, Civ. No. 14-1864, 2015 WL 9308241, at *3 (D.N.J. Dec. 22, 2015) (citing *Jablonski v. Pan Am. World Airways, Inc.*, 863 F.2d 289, 292 (3d Cir. 1988)); *see also Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000) ("'Futility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted.") (citations omitted). When assessing

10

whether leave to amend a pleading would be futile, "the district court applies the same standard of legal sufficiency as applies under Rule 12(b)(6)" for failure to state a claim. *In re Burlington*, 114 F.3d at 1434.

On a motion to dismiss for failure to state a claim, courts "accept the factual allegations in the complaint as true, draw all reasonable inferences in favor of the plaintiff, and assess whether the complaint and the exhibits attached to it 'contain enough facts to state a claim to relief that is plausible on its face.'" *Wilson v. USI Ins. Serv. LLC*, 57 F.4th 131, 140 (3d Cir. 2023) (quoting *Watters v. Bd. of Sch. Dirs. of City of Scranton*, 975 F.3d 406, 412 (3d Cir. 2020)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Clark v. Coupe*, 55 F.4th 167, 178 (3d Cir. 2022) (quoting *Mammana v. Fed. Bureau of Prisons*, 934 F.3d 368, 372 (3d Cir. 2019)). When assessing the factual allegations in a complaint, courts "disregard legal conclusions and recitals of the elements of a cause of action that are supported only by mere conclusory statements." *Wilson*, 57 F.4th at 140 (citing *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 904 (3d Cir. 2021)). The defendant bringing a Rule 12(b)(6) motion bears the burden of "showing that a complaint fails to state a claim." *In re Plavix Mktg., Sales Pracs. & Prod. Liab. Litig. (No. II)*, 974 F.3d 228, 231 (3d Cir. 2020) (citing *Davis v. Wells Fargo*, 824 F.3d 333, 349 (3d Cir. 2016)).

Allegations asserting claims under the FCA must meet Rule 9(b)'s heightened pleading standard. *United States ex rel. Petras v. Simparel, Inc.*, 857 F.3d 497, 502 (3d Cir. 2017); *see also* Fed. R. Civ. P. 9(b) ("In alleging fraud . . ., a party must state with particularity the circumstances constituting fraud[.]"). This ordinarily requires "[a] plaintiff alleging fraud . . . [to] support its allegations 'with all of the essential factual background that would accompany the first paragraph

11

of any newspaper story—that is, the who, what, when, where and how of the events at issue.'" *United States ex rel. Moore & Co., P.A. v. Majestic Blue Fisheries, LLC*, 812 F.3d 294, 307 (3d Cir. 2016) (quoting *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 217 (3d Cir. 2002)); *accord Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007) ("To satisfy this standard, the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation."). While Rule 9(b)'s "normally rigorous particularity rule has been relaxed somewhat where the factual information is particularly within the defendant's knowledge or control," a plaintiff must still allege facts "demonstrating that his [or her] fraud claims are plausible." *Tripati v. Wexford Health Sources Inc.*, No. 22-1861, 2022 WL 17690156, at *2 n.3 (3d Cir. Dec. 15, 2022) (quoting *In re Burlington*, 114 F.3d at 1418).

The Court finds that Relators' proposed FAC does not cure the deficiencies discussed by the Court in its two prior Opinions for either of the alleged schemes, and thus the FAC would not withstand a motion to dismiss. As such, the Court finds that amendment would be futile.

### 1.   *Medically Unnecessary Testing*

Relators argue that the "five additional well-pled paragraphs . . . when considered in conjunction with the allegations previously pled, fully address the issues" that caused the Court to dismiss Relators' TAC as to the alleged scheme regarding medically unnecessary testing. (ECF No. 73-1 at 3-4.) Relators contend that "[n]ot only did Defendants specifically design their forms to encourage providers to order multiple tests and use marketing materials to further promote the ordering of multiple tests, Defendants went a step further by verbally and specifically telling medical providers, including doctors themselves when they inquired about ordering certain single tests, that they could not do so and instead pushed the alleged need for multiple tests." (*Id.* at 6.)

In response, Defendants argue that the additional allegations do not sufficiently address the issues identified in the Court's prior Opinion. (ECF No. 76 at 17-25.) They argue that Relators'

12

allegations regarding "how" the fraud occurred continue to be undermined by their exhibits, (*id.* at 20-21), and otherwise fail to establish a plausible scheme to submit false claims, (*id.* at 21-23). Defendants also argue that Relators still fail to plead any reliable indicia that would enable the Court to make a strong inference that false claims were actually submitted for payment to the Government. (*Id.* at 23-24.) They assert that Relators have not "corroborated" their allegations in any way, such as by attaching additional exhibits or by alleging that doctors in fact were routinely prevented from ordering single tests.[5] (*Id.* at 24.)

To state an FCA claim in the Third Circuit, a relator must plead four elements of any alleged scheme: "falsity, causation, knowledge, and materiality."[6] *United States ex rel. v. Petratos v.*

---

[5]   Defendants suggest that Relators' allegations related to marketing materials constitute a separate theory of liability under the FCA. (*See* ECF No. 76 at 8 ("Relators have not added any new allegations addressing this Court's dismissal of their FCA theory based on (unidentified) marketing materials.").) Drawing inferences in favor of Relators, the Court understands this allegation as part of the purported medically unnecessary testing scheme, wherein Relators allege Defendants "encourage[d] and promote[d] providers to order . . . medically unnecessary tests, through marketing materials and test panels on preprinted test requisition forms." (ECF No. 73-2 ¶ 32.) However, as Defendants note, the Court found that this "sole allegation" regarding the use of marketing materials was too conclusory to meaningfully impact its analysis of this scheme, as the SAC failed to "identify or explain what these alleged 'marketing materials' are or how Genesis used the marketing materials" to facilitate the alleged scheme. *Jensen*, 2025 WL 615480, at *11. The TAC did not include additional allegations in this regard, and the proposed FAC also does not elaborate on the marketing materials. As such, while the Court considers this allegation alongside other allegations related to this alleged scheme, the issues previously identified by the Court have not been resolved.

[6]   The Third Circuit uses multiple articulations of the elements of an FCA claim. *Compare Bennett v. Bayer Corp.*, No. 24-1807, 2025 WL 1435591, at *2 (3d Cir. Apr. 10, 2025) ("A False Claims Act violation includes four elements: falsity, causation, knowledge, and materiality." (quoting *United States ex rel. v. Petratos v. Genentech Inc.*, 855 F.3d 481, 487 (3d Cir. 2017))), *with United States ex rel. O'Bier v. TidalHealth Nanticoke, Inc.*, No. 21-2123, 2022 WL 264554, at *2 (3d Cir. Jan. 28, 2022) ("To state a claim under the False Claims Act, a plaintiff must allege: '(1) the defendant presented or caused to be presented to an agent of the United States a claim for payment; (2) the claim was false or fraudulent; and (3) the defendant knew the claim was false or fraudulent.'" (quoting *United States ex rel. Bookwalter v. UPMC*, 946 F.3d 162, 175 (3d Cir. 2019))); *see also Allstate Ins.*, 2024 WL 2785396, at *7 ("The Third Circuit sometimes recounts [elements of an FCA claim] differently.").

*Genentech Inc.*, 855 F.3d 481, 487 (3d Cir. 2017) (citing *United Health Servs., Inc. v. United States ex rel. Escobar*, 579 U.S. 176, 182 (2016) (materiality), and *United States ex rel. Wilkins v. United Health Grp., Inc.*, 659 F.3d 295, 304-05 (3d Cir. 2011) (falsity, causation and knowledge)); *see also United States v. Care Alts.*, 81 F.4th 361, 366-67 (3d Cir. 2023) (citations omitted) (same). Moreover, an FCA complaint must meet Rule 9(b)'s heightened pleading standard, going "well beyond Rule 8's threshold of plausibility." *United States v. Bracco USA, Inc.*, No. 24-1668, 2025 WL 1261779, at *2 (3d Cir. May 1, 2025) (quoting *United States ex rel. Bookwalter v. UPMC*, 946 F.3d 162, 176 (3d Cir. 2019)).

To satisfy this standard, a plaintiff must provide "particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted." *Foglia*, 754 F.3d at 157-58 (citation omitted). Indeed, "[d]escribing a mere opportunity for fraud will not suffice." *Id*. at 158. While a plaintiff need not identify a specific claim for payment, *id.* at 156 (citation omitted), the allegations must be particular enough to put defendants on notice of the "precise misconduct with which they are charged," *Bookwalter*, 946 F.3d at 176. Moreover, "[a]llegations of facts that could plausibly have either a legal or illegal explanation fall short of Rule 9(b)'s burden because the possibility of a legitimate explanation undermines an inference that false claims were submitted." *United States v. Bracco USA, Inc.*, Civ. No. 20-8719, 2024 WL 1161384, at *3 (D.N.J. Mar. 14, 2024) (citation modified) (quoting *United States v. Omnicare, Inc.*, 903 F.3d 78, 92 (3d Cir. 2018)), *aff'd*, No. 24-1668, 2025 WL 1261779, at *2 (3d Cir. May 1, 2025).

In *Allen*, the plaintiff alleged that providers and patients were "coerce[d]" into excessive testing "without regard to whether those frequencies are medically necessary" by primarily "removing less-frequent testing options from their pre-printed enrollment forms" and through

14

"marketing material." *United States ex rel. Allen v. Alere Home Monitoring, Inc.*, 334 F. Supp. 3d 349, 353 (D. Mass. 2018). The court rejected the plaintiff's assertion that claims submitted pursuant to pre-printed forms were necessarily false and granted the defendant's motion to dismiss as to this theory because "[t]he physicians' intervening medical judgment" impeded this theory. *Id.* at 359. The court found that "standing alone, the form does not permit one to distinguish between a claim that involved genuine medical judgment and a claim that was medically unnecessary," and therefore the forms "may create a possibility of fraud by pressuring doctors into prescribing medically unnecessary tests to give their patients the convenience of at-home testing" but did not give rise to a strong inference that false claims were actually submitted. *Id.* (citation omitted).

The Court previously identified two primary deficiencies in Relators' TAC: Relators failed to sufficiently allege "how" the fraud related to medically unnecessary testing occurred, and Relators failed to allege reliable indicia that false claims for payment were actually submitted to the Government. *Jensen*, 2025 WL 3763951, at *4-7.

As for "how" the fraud occurred, the Court found that the respiratory testing requisition form provided by Relators showed "manifest efforts to inform providers of the tests they were ordering, to seek a specific diagnosis, and to remind providers of their duty to order only medically necessary tests," features that were inconsistent with Relators allegations and that went unaddressed in briefing. *Id.* at *6. Again, Relators do not address these inconsistencies. Relators' additional allegations pertain to what various employees of Defendant told sales representatives, and, drawing inferences in favor of Relators, what sales representatives then told to providers, but "mere opportunity for fraud will not suffice" to meet the heightened pleading standard of Rule 9(b). *Foglia*, 754 F.3d at 158.

15

Relators cite *United States ex rel. Bookwalter v. UPMC*, 946 F.3d 162 (3d Cir. 2019), for the proposition that the falsity of the alleged scheme comes from "a set of circumstances that, if true, makes a whole set of claims at least prima facie false." (ECF No. 73-1 at 6-7.) But Relators ignore the particularity of *Bookwalter*'s allegations, which pertained to a violation of the Stark Act. *Bookwalter*, 946 F.3d at 175 ("The claims are false because they allegedly violated the Stark Act."). The Third Circuit reversed the district court, as Relators note, but only because of the degree of particularity alleged in the complaint:

> The complaint compares [specific physicians' Work Units and pay levels] at length with industry benchmarks, medians, and 90th percentiles. It alleges specific ways that surgeons padded their bills, by for instance falsely reporting unperformed work assisting other surgeons or physically supervising residents and interns. The complaint also quotes the government's settlement agreement, alleging specific ways that surgeons had been padding their bills. The sum total of these allegations tells a detailed story about how the defendants designed a system to reward surgeons for creating and submitting false claims.

*Id.* at 176-77.

Relators' allegations do not tell such a "detailed story." In *Bookwalter*, the plaintiffs included "specific ways" that providers created and submitted false claims, which were encouraged by the defendants' "system." *Id.* Here, Relators do not allege any specific ways that providers ordered medically unnecessary tests as a result of Defendants' conduct. While it is possible that some providers were swayed by sales representatives to order medically unnecessary tests—despite the requisition forms' admonitions about medical necessity, space on requisition forms to order individual tests, and a clear listing of tests included in panels—as the Court explained in its prior Opinion, a "possibility" does not satisfy the heightened Rule 9(b) pleading standard. *Jensen*, 2025 WL 3763951, at *6. Here, taking all of Relators' allegations as true as the

16

Court must, there is still no "set of circumstances that, if true, makes a whole set of claims at least prima facie false." *Bookwalter*, 946 F.3d at 175.

Indeed, Relators do not sufficiently allege "reliable indicia that lead to a strong inference that false claims for payment were actually submitted" to the Government for payment. *Foglia*, 754 F.3d at 157-58. Relators concede that reliable indicia are "still required at the pleading stage," and they "recognize[]" that "simply describing an opportunity for fraud is not enough." (ECF No. 73-1 at 7-8.) Relators list the allegations that purportedly comprise reliable indicia. (*Id.* at 8-9.) However, the Court finds that these allegations are not reliable indicia akin to the numerous examples the Court previously provided in prior Opinions. *See Jensen*, 2025 WL 3763951, at *6 (collecting cases); *Jensen*, 2025 WL 615480, at *13. Rather, they resemble those pled in *Allen*, which the court found did not meet the Rule 9(b) standard. 334 F. Supp. 3d at 359. The Court has thoroughly discussed the court's ruling in *Allen* in its previous Opinions, but Relators cite no cases in their brief that support an alternate outcome.[7]

Taken together, the Court finds that Relators' FAC "cannot withstand a renewed motion to dismiss." *Gabros*, 2015 WL 9308241, at *3. As such, Relators' request to amend the complaint is denied as to this theory of liability.[8]

---

[7] The Court notes that Relators' new allegations refer to a "calprotectin" test, which is a GI test. (ECF No. 73-2 ¶ 43.) Although Relators did not make additional allegations as to GI testing in the TAC, (*compare* ECF No. 32, *with* ECF No. 58), to the extent Relators now seek to add allegations regarding GI testing, the Court finds that Relators do not sufficiently allege fraud as to GI testing for the same reasons they do not sufficiently allege fraud as to respiratory testing, discussed *supra*.

[8] The Court further finds that Relators fail to adequately allege materiality, which is a "demanding" and "rigorous" standard. *Universal Health Servs., Inc. v. United States ex rel. Escobar*, 579 U.S. 176, 194-95 (2016). Despite the Court's previous admonitions, *see Jensen*, 2025 WL 615480, at *15 n.17; *Jensen*, 2025 WL 3763951, at *7 n.12, the FAC nonetheless "provides scarce facts surrounding materiality," *United States ex rel. Chunyan Cao v. West-Ward Pharms.*, Civ. No. 13-3962, 2019 WL 7562747, at *3 (D.N.J. July 30, 2019).

17

### 2.      *Anti-Kickback Statute*

The FAC contains no additional allegations regarding the alleged kickback scheme, and Relators' Motion to Amend does not address this scheme.[9] (*See generally* ECF Nos. 73-1, 73-2.) Defendants argue that Relators' failure to amend the allegations related to this theory means that the FAC "remains insufficient for exactly the same reasons as the TAC." (ECF No. 76 at 19.)

The Court's prior Opinions found that Relators failed to allege the requisite elements of remuneration and inducement necessary to state a violation of the Anti-Kickback statute. *See Jensen*, 2025 WL 615480, at *14-15; *Jensen*, 2025 WL 3763951, at *8. As for the remuneration element, in the Court's February 2025 Opinion, the Court found that Relators did not allege remuneration as to respiratory and GI tests because, as Relators acknowledged, "medically necessary clinical diagnostic tests are generally not subject to specific test coinsurance or deductibles." *Jensen*, 2025 WL 615480, at *14. While Relators pointed out that certain pathology tests can be subject to coinsurance and an annual deductible, and thus remuneration was possible, the Court found that the SAC "fail[ed] to provide more than one cursory reference to those tests." *Id.* And in the Court's December 2025 Opinion, although Relators added more allegations regarding pathology tests (but not respiratory or GI tests), the Court found remuneration still not adequately pled because Relators "rel[ied] heavily" on the conclusory assertion that "based on

---

[9]      A violation of the Anti-Kickback statute does not create a private right of action but rather may give rise to an independent claim under the False Claims Act. *See United States v. Bracco USA, Inc.*, Civ. No. 20-8719, 2022 WL 17959578, at *7 (D.N.J. Dec. 27, 2022). To state a violation of the Anti-Kickback statute, Relators must plead that Defendants (1) "knowingly and willfully"; (2) "solicit[ed] or receive[d] any remuneration"; (3) "in return for referring an individual to a person for the furnishing . . . of any item or service for which payment may be made in whole or in part under a Federal health care program." *United States ex rel. Perri v. Novartis Pharm. Corp.*, Civ. No. 15-6547, 2019 WL 6880006, at *10 (D.N.J. Feb. 21, 2019) (quoting *United States v. Goldman*, 607 F. App'x 171, 173-74 (3d Cir. 2015)).

18

practices observed," half of pathology test copays were waived; Relators did not describe those "practices."[10]  *Jensen*, 2025 WL 3763951, at *8 (collecting cases).

As for Relators' allegations regarding inducement, the Court held in its February 2025 Opinion that the allegations and exhibits regarding "write-offs" did not meet Rule 9(b)'s heightened pleading standard because they "fail[ed] to demonstrate that Defendants waived copayments with the purpose of inducing referrals from either physicians or patients."  *Jensen*, 2025 WL 615480, at *15.  In the Court's December 2025 Opinion, the Court found that the additional allegations regarding pathology testing did not alter its conclusion regarding inducement.  *Jensen*, 2025 WL 3763951, at *8.

Relators' FAC contains no additional allegations regarding the purported kickback scheme. As such, Relators have not attempted to address the deficiencies the Court outlined in its previous two Opinions.  The Court therefore must conclude that "the amendment will not cure the deficiency in the original complaint" and that "the amended complaint cannot withstand a renewed motion to dismiss."  *Gabros*, 2015 WL 9308241, at *3.  As such, Relators' request to amend the complaint is also denied as to this theory of liability.

---

[10]     The Court notes Relators' allegation that billing for these tests was in the exclusive control of Defendants and Relators did not have access to these billings.  (ECF No. 73-2 ¶ 87.)  However, Relators still fail to allege factual allegations that make their assertion of waived copays plausible under a Rule 8 standard.  *Cf. U.S. ex. Rel. Whatley v. Eastwick College*, Civ. No. 13-1226, 2015 WL 4487747, at *7 (D.N.J. July 23, 2015) (finding allegations that "upon information and belief" the defendant charged fees to cover student aid application costs were "speculative" and "unsupported" and "fail[ed] to satisfy even the more lenient pleading standard under [Rule] 8(a)"); *In re Home Easy, Ltd.*, 672 B.R. 595, 615 (Bankr. D.N.J. 2025) ("Trustee repeatedly and impermissibly relies on 'information and belief' in alleging the key facts of his fraud claims, not facts upon which the allegations are founded, which falls short of satisfying even a relaxed application of Rule 9.").

### 3.      *Remaining Claims*

Because Relators have not adequately pled an underlying violation of the FCA, Relators' conspiracy claim would also fail.  *See United States ex rel. Petras v. Simparel, Inc.*, 857 F.3d 497, 507 n.53 (3d Cir. 2017) (citing *Pencheng Si v. Laogai Rsch. Found.*, 71 F. Supp. 3d 73, 89 (D.D.C. 2014), for the proposition that without an underlying violation of the FCA, there can be no liability for conspiracy).  With all federal claims found futile, the Court declines to exercise supplemental jurisdiction over any potential state law claims.  *See also United States ex rel. Travis v. Gilead Sci., Inc.*, 596 F. Supp. 3d 522, 543 n.159 (E.D. Pa. 2022) ("Where no party has alleged a material difference between the standards applicable to the FCA and equivalent state laws, on a motion to dismiss these claims succeed or fall together." (citing *United States ex rel. Petratos v. Genentech, Inc.*, 141 F. Supp. 3d 311, 322 (D.N.J. 2015), *aff'd*, 855 F.3d 481 (3d Cir. 2017)).

### B.      Other Factors

Aside from futility, other grounds that justify denial of leave to amend include undue delay, the movant's bad faith or dilatory motive, "repeated failure to cure deficiencies by amendments previously allowed," and undue prejudice to the defendants.  *Foman*, 371 U.S. at 182; *In re Burlington*, 114 F.3d at 1434.

Relators assert that "[t]he proposed amendment is not being sought in bad faith, would not cause undue delay, and would not prejudice the opposing party."  (ECF No. 73-1 at 2.)  Defendants contest this assertion and argue that, rather, each of these factors is indeed present.  (ECF No. 76 at 26.)

Defendants argue that Relators' pleadings have unduly delayed the litigation, prejudiced the defendants, and burdened the court.  (*Id.* at 26-29.)  They assert that Relators could have included the new allegations from the inception of this litigation, as the additional factual allegations are not those "which they did not know about earlier."  *Id.* at 26 (quoting *Gasoline*

20

*Sales, Inc. v. Aero Oil Co.*, 39 F.3d 70, 74 (3d Cir. 1994)) (citation modified). They further contend that the "pattern of piecemeal amendment" demonstrated in the successive amended complaints is "particularly egregious because Relators have had explicit guidance from the Court on precisely what was lacking in their pleadings." *Id.* at 27. Defendants argue that Relators' purported "incremental pleading strategy has unfairly prejudiced Defendants," forcing them to expend "substantial resources" defending multiple "deficient complaints." *Id.* at 28. Finally, Defendants assert that amendment would consume more judicial resources, as the Court would need to review another motion to dismiss and to issue another opinion. *Id.* at 29.

While "[t]he mere passage of time does not require that a motion to amend a complaint be denied on grounds of delay," and delay alone does not suffice to deny leave to amend, "at some point, the delay will become 'undue,' placing an unwarranted burden on the court, or will become 'prejudicial,' placing an unfair burden on the opposing party." *Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 273 (3d Cir. 2001) (citations omitted). Indeed, Rule 15(a) "allows for misunderstandings and good-faith lapses in judgment" by a plaintiff, "so long as the party thereafter acts reasonably and diligently." *Arthur v. Maersk, Inc.*, 434 F.3d 196, 206 (3d Cir. 2006). Denying leave to amend may be "an appropriate exercise of discretion where the court has previously provided the plaintiffs with 'a detailed roadmap for curing the deficiencies in their claims' and the plaintiffs still fail to remedy those deficiencies in the amendment." *Killion v. Coffey*, 2016 WL 5417193, at *18 (D.N.J. Sep. 27, 2016) (quoting *Cal. Pub. Emps. Ret. Sys. v. Chubb Corp.*, 394 F.3d 126, 166 (3d Cir. 2004)).

In *Rolo v. City Inv. Co.*, 155 F.3d 644, 654-55 (3d Cir. 1998), the Third Circuit affirmed the district court's denial of leave to amend where "the plaintiffs' proposed Second Amended Complaint primarily seeks to replead facts and arguments that could have been pled much earlier

21

in the proceedings," concluding that "[p]laintiffs have already had ample opportunity to plead their allegations properly and completely." The court also found that "[t]he duration of this case," as well as "the substantial effort and expense of resolving defendants' Motion to Dismiss the First Amended Complaint" supported the district court's denial of leave to amend. *Id.* at 655.

In *Gasoline Sales, Inc. v. Aero Oil Co.*, the Third Circuit affirmed the district court's denial of leave to file a third amended complaint because the amendment was "repetitive" as well as futile. 39 F.3d at 74. The court noted that the plaintiff "is not seeking to add claims it inadvertently omitted from its prior complaints or which it did not know about earlier" but rather "is modifying its allegations in hopes of remedying factual deficiencies in its prior pleadings." *Id.* It agreed with the district court's opinion that "three attempts at a proper pleading is enough," and that a "plaintiff has to carefully consider the allegations to be placed in a complaint before it is filed." *Id.*

In *California Public Employees' Retirement System v. Chubb Corp.*, 394 F.3d 126 (3d Cir. 2004), the Third Circuit affirmed the district court's denial of leave to file a third amended complaint. After considering allegations under a Rule 9(b) standard, the district court found the plaintiffs had failed to plead fraud with particularity and denied leave to amend, reasoning that Relators had been given "ample opportunity [three complaints] to state a cognizable cause of action" and "continu[ing] to require defendants to defend the action, and to ultimately incur the effort and expense of a third motion to dismiss after two successful dismissal motions, would clearly constitute undue prejudice to the defendants." *Id.* at 163. The Third Circuit found the district court did not abuse its discretion by denying leave to amend because the district court provided the plaintiffs "with a detailed blueprint of how to remedy the defects in their claims," yet the plaintiffs still "neglected to supplement the existing allegations . . . with sufficiently

22

particularized" allegations as directed by the district court. *Id.* at 164. It also added that "[d]efendants have already been forced to defend against three complaints." *Id.* at 166.

Here, too, the Court finds good cause to deny leave to amend. The Court agrees with Defendants that by adding a handful of allegations that address some—but not all—deficiencies identified by the Court in its Opinions dismissing Relators' SAC and TAC,[11] Relators have unduly prejudiced Defendants and unduly burdened the Court through significant time and effort spent resolving motions to dismiss. *Rolo*, 155 F.3d at 655; *Cal. Pub. Emps.*, 394 F.3d at 164-66. This piecemeal type of pleading is not suggestive of the reasonableness and diligence that would counsel in favor of amendment. *Arthur*, 434 F.3d at 206. Moreover, Relators' additional allegations could have been alleged when Relators filed the original Complaint nearly six years ago. (ECF No. 1.) *Gasoline Sales*, 39 F.3d at 74. As such, the Court finds that denial to amend is further appropriate because of undue delay, undue prejudice to defendants, and Relators' repeated failure to cure deficiencies. *Foman*, 371 U.S. at 182. This fifth attempt at pleading "is enough." *Gasoline Sales*, 39 F.3d at 74; *see also Cal. Pub. Emps.*, 394 F.3d at 166.

---

[11] The Court notes Defendants' suggestion that Relators' new allegations reference GI testing and thus may be an attempt to revive this theory of medically unnecessary testing, even though Relators' TAC did not address the deficiencies related to GI testing outlined by the Court in its February 2025 Opinion dismissing the SAC. (ECF No. 76 at 20.)

## IV.     CONCLUSION

For the foregoing reasons, and other good cause shown, Relators' Motion for Leave to File a Fourth Amended Complaint (ECF Nos. 73, 75) is **DENIED** with prejudice.  An appropriate Order follows.


Dated: June 30 , 2026

**GEORGETTE CASTNER**
**UNITED STATES DISTRICT JUDGE**